Nina Wasow
Daniel Feinberg
FEINBERG, JACKSON,WORTHMAN &
WASOW LLP
2030 Addison Street, Suite 500
Berkeley, CA 94704
Telephone: (510) 269-7998
Fax: (510) 269-7994
Email: nina@feinbergjackson.com
        dan@feinbergjackson.com

Michael Quiat
Joel Zelkowitz
USCHER, QUIAT, USCHER & RUSSO,
P.C.
433 Hackensack Ave.
Hackensack, NJ 07601
Telephone: (201) 342-7100
Fax: (201) 342-1810
Email: mquiat@uqur.com
        jzelkowitz@uqur.com

*Attorneys for Plaintiff Nancy Bumgarner*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NANCY BUMGARNER,<br><br>              Plaintiff,<br><br>      v.<br><br>PRUDENTIAL INSURANCE COMPANY<br>OF AMERICA,<br><br>              Defendant. | No.<br><br>**COMPLAINT (ERISA)** |

1

## JURISDICTION

1.      Plaintiff brings this action for declaratory, injunctive, and monetary relief pursuant to § 502(a)(1)(B) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). This Court has subject matter jurisdiction over Plaintiff's claims pursuant to ERISA § 502(e) and (f), 29 U.S.C. § 1132(e) and (f), and 28 U.S.C. § 1331.

## VENUE

2.      Venue lies in the Southern District of New York pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the KPMG LLP Long Term Disability Insurance Plan (the "Plan") is administered in part in this District, and because Defendant may be found in this District. Venue is also proper pursuant to 28 U.S.C. § 1391(b), because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District.

## THE PARTIES AND THE PLAN

3.      At all relevant times, Plaintiff Nancy Bumgarner ("Ms. Bumgarner" or "Plaintiff") was a participant, as defined by ERISA § 3(7), 29 U.S.C. § 1002(7), in the Plan. At all relevant times, Ms. Bumgarner resided in Wyckoff, New Jersey.

4.      At all relevant times, the Plan was an employee welfare benefit plan within the meaning of ERISA § 3(1), 29 U.S.C. § 1002(1), sponsored by KPMG LLP.

5.      At all relevant times, the Plan offered long-term disability benefits to partners, including Plaintiff, through an insurance policy issued by Defendant Prudential Insurance Company of America ("Prudential"), with the group policy number G-43764-DE. (See Policy set forth hereto as Exhibit A) At all relevant times, Prudential was responsible for making decisions on claims under the Plan.

## FACTS

**A.      Plaintiff's Work and the Plan's Definition of Disability.**

6.      Ms. Bumgarner was a Senior Partner at KPMG in New York City. As an expert on auditing standards, her primary responsibility was supporting teams of auditors working in the field with clients with direct consultation on their interpretation of the standards. She also developed and delivered technical trainings and published guidance and methodology for the

2

audit practice.

7. Her role required working at least 50-60 hours per week reading and writing technical texts, processing information quickly and accurately, participating in and/or leading multiple meetings per day, engaging in complex decision-making, and communicating effectively. In sum, Ms. Bumgarner's occupation was highly demanding.

8. Under the Plan, you are Disabled if "[Y]ou are unable to perform the *material and substantial duties* of your *regular occupation* as a partner at KPMG or any other 'Big Four' accounting firms due to your *sickness or injury*." "Big Four" is a shorthand term used to refer collectively to the four largest professional services networks in the world, one of which is KPMG.

9. The Plan defines material and substantial duties as "duties that: are normally required for the performance of your regular occupation; and cannot be reasonably omitted or modified."

**B.     Plaintiff's Medical Conditions and Departure From Work.**

10. On January 26, 2018, Ms. Bumgarner slipped on ice and fell, hitting her head. She suffered a concussion and reported feeling confused, nauseous, and dizzy in the aftermath of the fall. A CT scan done at the hospital the day of the accident was unremarkable, but an MRI performed several months later showed abnormalities suggestive of a traumatic brain injury which would not be picked up on a CT scan.

11. For months after her head injury, Ms. Bumgarner was largely homebound due to headaches, disorientation, and inability to handle stimuli. Eager to return to the career she loved, after experiencing limited improvement Ms. Bumgarner returned to work on a part-time basis in January 2019. She started out working 24 hours per week out of an office close to her home in New Jersey (rather than KPMG's national office in Manhattan), in part to minimize the noise and activity to which would be exposed.

12. However, even with these modifications to her schedule and location, working proved to be unsustainable. She struggled with 4 to 5 hour shifts and ended up reducing to 3-hour shifts. She experienced frequent headaches that were exacerbated by noise and light, nausea,

3

problems with memory and attention, and fatigue. After approximately six months, she stopped working altogether. She became eligible for long-term disability ("LTD") benefits on February 3, 2019.

**C.    Ms. Bumgarner is Disabled as a Result of Cognitive Impairment, Migraines and Fatigue.**

13.    Since her brain injury, Ms. Bumgarner has experienced cognitive dysfunction associated with post-concussive syndrome. She reports difficulty with short-term memory, concentration, multi-tasking and decision-making. Repeated neuropsychological testing done between 2018 and 2023 confirms deficits compared to premorbid functioning in multiple areas including processing speed, attention, executive functioning, memory, and verbal fluency. There is no evidence of improvement in her cognitive dysfunction over time.

14.    In addition, since her injury Ms. Bumgarner has suffered from chronic migraine headaches and significant fatigue. Prior to the accident, she had 2-3 migraines per month and they were sufficiently managed with medication to permit her to do her job. Since 2018 she has had headaches nearly every day, which can be triggered by television, music, multi-tasking, being in groups of people, shopping, and reading. Any form of physical exertion exhausts her and she needs to nap most days.

15.    Ms. Bumgarner's treating neurologist, Dr. Olga Noskin, has diagnosed her with post-concussion syndrome and chronic intractable migraine without aura. Dr. Noskin opined that Ms. Bumgarner is permanently disabled from her job as a result of her symptoms of daily headaches, difficulty concentrating and organizing herself, excessive sleep requirement and an inability to read or concentrate without developing headache or nausea. Dr. Noskin has been treating Ms. Bumgarner for more than 10 years and has first-hand observations of how her functioning has changed since her brain injury.

16.    Neuropsychologist Dr. Leo Shea has noted that the cognitive areas in which Ms. Bumgarner performed well below expectations – including processing speed, sustained and divided attention, and working memory – are critical to the performance of her job, and he opined that she is disabled from working in her own occupation.

4

17. A Functional Capacity Evaluation found that "Ms. Bumgarner's overall symptomatology from the Traumatic Brain Injury greatly impact her ability to multi-task, sustain concentration and focus, perform complex, critical, and analytical tasks on a consistent and persistent basis, as required in her work as a Senior Partner." Moreover, the job requires "[e]xtensive reading and writing of technical and analytical information," and Ms. Bumgarner "is no longer able to engage in prolonged reading and has great difficulty comprehending and remembering the technical information that is critical to her work as a Senior Partner." The evaluation also noted that Ms. Bumgarner would not be able to participate in or lead multiple meetings per day, one of her essential job functions, due to sensitivity to noise, light, and activity which lead to headaches, nausea, and fatigue.

18. Ms. Bumgarner has experienced some symptoms of anxiety and depression since her injury, but according to her treating psychiatrist, Dr. Lori Simon, they are appropriately managed with medication and psychotherapy. Dr. Simon opined that Ms. Bumgarner has not displayed excessive preoccupation with her symptoms and that the depression/anxiety she experiences is "consistent with what one would expect from someone whose degree of functioning and lifestyle had been significantly affected by her traumatic brain injury." Dr. Simon has further stated unequivocally that Ms. Bumgarner does not have somatic symptom disorder (SSD) but rather has continually suffered from true cognitive symptoms. Dr. Simon has a sub-specialization in psychosomatic medicine with experience working on the psychiatry consult service for med/surg patients, so she is particularly qualified to render this opinion.

19. Dr. Shea also opined that Ms. Bumgarner's clinical presentation is inconsistent with an SSD diagnosis.

20. The Social Security Administration approved Ms. Bumgarner's claim for Social Security Disability (SSDI) benefits, meaning that she is unable to perform any job available in the national economy. She has also been found to be disabled by her other long-term disability insurer (Unum) and her group life insurer (MetLife).

E. **Prudential's Handling of Plaintiff's Claim.**

21. Prudential denied Ms. Bumgarner's initial application for LTD benefits on

5

November 27, 2019. She appealed, and Prudential granted the appeal in July 2020, paying benefits retroactive to February 2019. As part of the appeal, Dan Whitehead, Ph.D., reviewed the neuropsychological evidence for Prudential and concluded that Ms. Bumgarner is unable to work and that "[h]er psychological factors are a product of her cognitive impairments and are secondary to that and her other medical conditions." Nevertheless, just a few weeks after the appeal was granted, Prudential recommended surveillance and, "if observed," a repeat neuropsychological evaluation.

22.    In July 2021, Prudential's in-house neuropsychologist, Elana Mendelssohn-Gara,[1] recommended a neuropsychological IME because there was "suggestion of a mental nervous component to the EE's presentation." It is not clear what Dr. Mendelssohn-Gara was referring to, but Ms. Bumgarner was required to undergo another neuropsychological evaluation in August and September 2021. The evaluator, Angeles Cheung, found that Ms. Bumgarner had cognitive deficits but also suggested that she had somatic symptom disorder. Prudential terminated Ms. Bumgarner's LTD benefits on the ground that she had passed the 24-month limitation on benefits for mental illness.

23.    A reviewing neuropsychologist for Prudential, Jeremy Hertza, Psy.D., agreed with Dr. Shea that Ms. Bumgarner's presentation was not consistent with SSD, and another reviewing neuropsychologist for Prudential, Dr. Jasso, also opined that Ms. Bumgarner had cognitive restrictions. Prudential's reviewing neurologist, Dr. David Burke, agreed with Dr. Jasso that Ms. Bumgarner was limited to, *inter alia*, "no cognitively complex tasks," "time and a half for all tasks," "no higher executive functions," and no more than four hours per day of work. These limitations are incompatible with performance of Ms. Bumgarner's own occupation, and Prudential thus granted her second appeal and reinstated her benefits.

24.    Undeterred, Dr. Mendelssohn-Gara again recommended repeat neuropsychological

---

[1] Dr. Mendelssohn-Gara's opinions have been rejected as unreliable by courts nationwide. *See Carrier v. Aetna Life Ins. Co.*, 2015 WL 4511620, at *5 (C.D. Cal. July 24, 2015); *Stephens v. Aetna Life Ins. Co.*, 2012 WL 2711378, at *9 (S.D. Ohio July 9, 2012); *Neubert v. Life Ins. Co. of N. Am.*, 2012 WL 776992, at *17-19 (N.D. Ohio Mar. 8, 2012); *Smith v. Bayer Corp. Long Term Disability Plan*, 444 F. Supp. 2d 856, 863 (E.D. Tenn. 2006), aff'd in part, vacated in part, 275 F. App'x 495 (6th Cir. 2008).

6

testing in February 2023. The only justification given was that Dr. Hertza was no longer with ECN (the vendor with whom Prudential contracted for Dr. Hertza's review). There was no evidence of any change in Ms. Bumgarner's symptoms. Ms. Bumgarner was required to undergo neuropsychological testing with Dr. Anthony De Marco in April 2023. Dr. De Marco found similar cognitive deficits to the other neuropsychologists who have evaluated Ms. Bumgarner, but concluded that impairment was caused by mental illness. On that basis, Prudential once again terminated Ms. Bumgarner's benefits effective July 1, 2023.

25.    Ms. Bumgarner appealed for a third time in January 2024, and Prudential obtained an independent medical evaluation from neurologist Dr. Paul Lerner. This evaluation took only 20 minutes; Dr. Lerner barely looked at Ms. Bumgarner and, when she tried to provide more than a yes or no answer to his questions, he cut her off, even holding up his hand in a "stop talking" position multiple times. He cherrypicked her medical records in an effort to characterize her fatigue as preexisting her head injury, but Dr. Noskin confirmed that Ms. Bumgarner did not suffer from fatigue or cognitive dysfunction prior to her 2018 accident. Dr. Lerner ignored neuropsychological evidence of cognitive deficits and otherwise demonstrated bias toward finding that Ms. Bumgarner is not impaired.

26.    Prudential denied the third appeal by letter dated October 4, 2024.

27.    Plaintiff has exhausted her administrative remedies.

28.    At all relevant times, Plaintiff has been disabled within the meaning of the Plan.

**CLAIM FOR RELIEF**
**(ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B))**
**(Claim for Benefits)**

29.    Plaintiff realleges and incorporates herein by reference the allegations in paragraphs 1 through 28 as though fully set forth herein.

30.    ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), permits a plan participant to bring a civil action to recover benefits due to her under the terms of a plan, to enforce her rights under the terms of a plan, and/or to clarify her rights to future benefits under the terms of a plan.

31.    At all relevant times, Ms. Bumgarner has been entitled to long-term disability benefits under the Plan for his disabling conditions.

7

32.   By denying Plaintiff's application for long-term disability benefits under the Plan, and by related acts and omissions, Prudential has violated, and continues to violate, the terms of the Plan and Ms. Bumgarner's rights thereunder.

WHEREFORE, Plaintiff requests that judgment be entered in her favor and against Defendant as hereinafter set forth.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that the Court grant the following relief:

A.   Declare that Defendant has violated the terms of the Plan by denying Ms. Bumgarner's claim for long-term disability benefits from July 1, 2023, to the date of judgment;

B.   Order Defendant to pay long-term disability benefits to Plaintiff pursuant to the terms of the Plan from July 1, 2023, through the date judgment is entered herein, together with prejudgment interest on each and every such monthly payment through the date judgment is entered herein;

C.   Declare Plaintiff's right to receive future long-term disability benefit payments under the terms of the Plan;

D.   Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

E.   Provide such other relief as the Court deems equitable and just.

Dated: December 17, 2024

Respectfully submitted,

FEINBERG, JACKSON,
WORTHMAN & WASOW, LLP

By: _/s/ Nina Wasow_____
Nina Wasow
Attorney for Plaintiff

8